UNITED STATES, Appellee

v

MARVIN AUGUSTUS KAYLOR, Hospital Apprentice,
U. S. Navy, Appellant

10 USCMA 139, 27 CMR 213

No. 11,503

Decided January 23, 1959

Lieutenant (jg) Joseph A. Califano, Jr., USNR, argued the cause for
Appellant, Accused.

Major Ted H. Collins, USMC, argued the cause for Appellee, United
States. With him on the brief was Major Charles R. Larouche, USMC.

Opinion of the Court

Homer Ferguson, Judge:

The accused, on his plea of guilty, stands convicted by special court-martial of absence without leave, in violation of Article 86, Uniform Code of Military Justice, 10 USC § 886. Immediately after announcing the sentence of a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $65.00 per month for six months, and

**139**

reduction to the grade of hospital recruit, the president of the court-martial announced: "The court wishes to recommend clemency in view of the accused's sworn statement." The clemency recommended is appended to the record of trial and reads as follows:

"The court recommends clemency in the above-entitled case. The clemency recommended is that the portion of the sentence adjudging bad conduct discharge be remitted.

"The reasons for this recommendation are:

"That, at the time a recommendation for undesirable discharge was prepared, the accused had made a statement which was not incorporated with the recommendation and that he did not appear before a discharge advisory board;

"That the accused desires neither an undesirable discharge nor a bad conduct discharge;

"That the accused's conduct prior to the difficulties which resulted in a recommendation for undesirable discharge was very good;

"That the accused has a high GCT, which indicates his high potential value to the Navy; and

"That the accused presents an excellent military appearance and bearing and desires to continue his service in the Navy."

The convening authority approved the sentence and suspended the execution of the bad-conduct discharge, but did not provide for its remission.

This Court granted review on the issue whether the court impeached its own sentence against this accused.

The Government contends that United States v Doherty, 5 USCMA 287, 17 CMR 287, is controlling. ■■■ The accused contends it is distinguishable. Although Doherty, supra, and the instant case are quite similar, there are distinguishing features present in them which we feel justify a difference in result. There, as here, the court recommended clemency in the form of a remission of the

discharge. However, the majority opinion in Doherty, supra, indicates that there was no information presented to show whether the clemency recommendation was voluntarily prepared by the court or solicited by defense counsel. The opinion noted, however, the duty imposed upon defense counsel by paragraph 48j(1) of the Manual for Courts-Martial, United States, 1951, to prepare a recommendation for clemency in proper cases, and indicated it would not permit a recommendation prepared by defense counsel to impeach the verdict of the court. The majority there also said that the court members were apparently aware they need not impose a bad-conduct discharge and that, throughout the trial, counsel for the accused fought principally to save his client from being discharged. The Court, therefore, declined to find the court-martial had failed in its duty to adjudge an appropriate sentence.

Without specifically overruling Doherty, supra, we are constrained to limit it strictly to its facts. In the instant case, the clemency recommendation was clearly the voluntary act of the court-martial rather than something urged upon it by defense counsel. As noted earlier, the president of the court announced, contemporaneously with the sentence, that the court desired to recommend clemency. And the clemency recommended, although it was spelled out in a separate document sometime after the trial, was for a total and unqualified remission of the bad-conduct discharge. The voluntary announcement by the president at the time sentence was announced that the court desired to recommend clemency and the fact that their recommendation for remission of the bad-conduct discharge was unanimous presents something more than a possibility this is the type of clemency which the court had in mind all the time. We are unwilling to assume from the facts of this case that the clemency recommended was a product of trial defense counsel's urging.

There is nothing present in the case to indicate the court members knew they did not need to impose a bad-conduct discharge. No instructions on sentence

were given.[1] The question logically arises as to why a court-martial would impose a bad-conduct discharge and then, based on the same evidence, recommend a remission of it if they were not under the impression they were required to adjudge the discharge in the first instance. We do not treat this as an impeachment of the verdict by the court but rather as something more akin to an inconsistent or, at the least, ambiguous verdict. Impeachment of a verdict more properly re-fers to an attempt to show by evidence of jurors or others that the jury misunderstood their instructions, that the verdict was determined by chance, or the presence of misconduct or something of a similar nature. See, generally, 53 Am Jur, Trial, § 1105, et seq. No contention is made by the members of the court that the sentence as announced does not properly reflect their intention. What we have, rather, is an action so inherently inconsistent that we are not able to reconcile the court's actions and are led to question whether they had a proper appreciation of their own duties and powers.

Law officers and counsel, especially trial counsel of a special court-martial (see Manual for Courts-Martial, supra, paragraph 76c), should be alert to their responsibility to insure that sentences are definite, certain, and in proper form.

The recommendation for clemency in the instant case was unmistakably based upon the same evidence already heard by the court before it imposed sentence. Paragraph 77a of the Manual, supra, states in part:

"Mitigating circumstances *which could not be taken into consideration in determining the sentence* may be the basis of a recommendation for clemency by individual members of the court." [Emphasis supplied.]

Here, the mitigating circumstances expressed by the court in its recommendation for clemency in the form of remission of the bad-conduct discharge were presented to them before they an-nounced their sentence. They could have reached the result apparently desired by the simple expedient of not including a bad-conduct discharge as a part of the sentence. We are unwilling to speculate as to their reasons for proceeding in the manner utilized, but find that the sentence as announced with a contemporary announcement of clemency in the form of a remission of a portion of the sentence just adjudged renders the sentence ambiguous.

We subscribe to the following language used by the Chief Judge in his dissent in *Doherty*, supra:

"Unqualifiedly, I would not sanction any curtailment of the absolute freedom of a court to make recommendations for clemency. Moreover, when such a recommendation is made, it should not subject the court to the risk of having its sentence set aside. But, the inconsistency here between the court's action in imposing a bad-conduct discharge and its contemporaneous and unanimous recommendation for its complete remission is so striking and so unusual as to indicate that the court labored under a misapprehension of the full scope of its sentence power."

It should be noted that our decision here should in no way discourage clemency recommendations where appropriate, nor does it affect the situation where the court-martial recommends clemency in the form of a suspension or conditional remission of a discharge. Recommendations for complete and unqualified remission of a portion of a sentence are clearly distinguishable from recommendations for suspension. A court-martial does not have power to adjudge a suspended sentence. United States v Marshall, 2 USCMA 342, 8 CMR 142. If the suspension of a punitive discharge is considered appropriate, there is no way that the court-martial, acting alone, can accomplish it. Power to suspend is vested in the convening and supervisory authorities. On the other hand, total remission of a portion

---

[1] The instant case was tried before our decision in United States v Turner, 9 USCMA 124, 25 CMR 386, which con-demns the failure to instruct on maximum sentence.

of the sentence can readily be accomplished by not adjudging that portion in the first instance.

We note also the unanimous decision of this Court in United States v Cavallaro, 3 USCMA 653, 14 CMR 71. There, a board of review, after reviewing the record, issued a form decision affirming the findings and sentence as approved by the convening authority. On the same date, the board of review attached to the record a memorandum, in letter form, addressed to The Judge Advocate General, recommending that substantial clemency be exercised in the case. In its memorandum, the board said in part:

" 'We consider that the sentence is probably excessive in view of the circumstances, but is not so in law, and we have no basis to say that it is in fact.' "

In returning the case to the board of review for clarification, we said in part:

". . . [T]here is a duty on members of boards of review to act within their own sphere and they should not approve a sentence they consider excessive and then appeal to others to reduce. All persons who have any responsibility in fixing, affirming, or reviewing sentences should meet their responsibility by adjudging or affirming a fair and just sentence without regard to any further reductive action that might be taken by others who will subsequently act on the record.

. . . . .

". . . There is little reason for it to recommend that some other authority take action that can be accomplished by it to reduce a sentence if it considers it to be excessive."

And again:

". . . The difficulty we encounter in this case is that we are unable to ascertain whether the members of the board of review understood clearly . . . [their powers]."

We consider what occurred in *Cavallaro*, supra, at the board of review level to be analogous to what took place here at the trial level. Here, we have the court-martial recommending that another power act to effectuate a result which the court itself could have accomplished simply by not awarding a bad-conduct discharge. And we find difficulty in ascertaining whether the court-martial members properly understood their powers.

For the reasons stated, the sentence is set aside and the record of trial returned to The Judge Advocate General of the Navy. A rehearing on the sentence may be ordered.

Chief Judge QUINN concurs.

LATIMER, Judge (dissenting):

I dissent.

The accused in this case pleaded guilty to an unauthorized absence from September 9, 1957, until December 14, 1957. Records of his previous convictions established that he was tried for and convicted of three other absence without leave offenses within a period of nine months prior to the commission of the instant crime. In addition, he was punished under Article 15 of the Uniform Code of Military Justice, 10 USC § 815, for three similar offenses of shorter duration. After findings and before sentence, the accused made a statement in extenuation and mitigation in which he sought to excuse his latest offense because of having encountered some difficulty with officers of the Marine Corps. The thrust of his showing for leniency was that if he had to serve with the Marine Corps he could not remain in the service without getting into trouble but if he were permitted to serve with the Navy, he could perform his duties satisfactorily.

As indicated by the majority opinion, the accused was sentenced to a bad-conduct discharge, confinement at hard labor for six months, forfeiture of $65 per month for the same period of time, and reduction to the grade of hospital recruit. After announcing the sentence, the president stated, "The court wishes to recommend clemency in view of the accused's sworn statement." Thereafter, trial counsel announced he had other cases to try at that time and the

court closed. That terminated accused's trial so far as I can ascertain. However, found in the file following the exhibits introduced at the hearing is the undated typewritten statement recommending clemency which is quoted in the Court's opinion.

In order to reverse this case without directly overruling United States v Doherty, 5 USCMA 287, 17 CMR 287, the Court seems to find that the members of this court-martial were entirely ignorant of the law on punishment, for the opinion states: "There is nothing present in the case to indicate the court members knew they did not need to impose a bad-conduct discharge." I do not dispute that the record is silent with respect to their knowledge, but this proves nothing and I am unwilling to draw an inference from that fact that the members were ignorant of such a basic concept. In some seven and one-half years service on this Court, I do not recall ever having reviewed a record in which it affirmatively appeared the court was instructed that the imposition of a punitive discharge was not mandatory. Surely, doubts should not be cast on all of those cases. Moreover, up to the present time, I have always supposed that officers of the military services who are selected to man a court-martial were aware of their discretion to impose only such punishment as they consider appropriate, restricted only by the maximum limits set by the Code or the President. Certainly, absent anything to the contrary in the record, I would presume they were familiar with basic considerations governing sentences as set out in the law and as widely publicized as the one with which we now deal. Every officer has had some instruction on military justice and, with few exceptions, each punitive Article has a provision that the sentence shall be as a court-martial may direct. Therefore, unless there are extraneous matters injected into the trial, I just do not understand how, or why, a court member would believe any particular ingredient of a sentence must be imposed. Most assuredly if they do not know about the imposition of a punitive discharge being permissive, they would be uninformed on their discretion to

impose forfeitures, hard labor, and reductions. In this instance, those forms of punishment were imposed without recommendation for remission and so when the Court's opinion is subjected to close scrutiny it appears that the lack of knowledge imputed to the court-martial must be inferred solely from its recommendation made for the benefit of an accused.

The next proposition advanced by the majority with which I take issue is this. As I interpret the record, the quoted recommendation was not issued contemporaneously with the announcement of the sentence. If it had been, it would have been reported in the record as was everything else said by the president. The document is not even incorporated in the record by reference or otherwise, and the best information I can ascertain from the files is that it was prepared and submitted to the convening authority sometime between the time the court closed and the date the reviewing officer acted, which was a period of some twelve days. My colleagues concede this to be so, but nevertheless appraise the facts to show "something more than a possibility" that the later specific recommendation was what "the court had in mind all the time." Certainly that is a weak rod upon which to predicate a finding that the quoted recommendation was contemporaneous. Moreover, although they state their unwillingness to so find, I point out that defense counsel was alerted to the desires of the court through their announced general disposition toward clemency, and if he performed the duties placed upon him by the Manual for Courts-Martial, United States, 1951, paragraph 77a— and I must assume he did—the specific recommendation was prepared by him. That is the same situation which confronted us in United States v Doherty, supra, and is a far cry indeed from my colleagues' conclusion that the "recommendation was clearly the voluntary act of the court-martial rather than something urged upon it by defense counsel."

To me this is just another case in which this Court speculates that the court-martial erred because it sought to assist the accused when this case was subsequently reviewed. And the error is

found to exist in spite of the fact that members followed the law which permits a recommendation for clemency to accompany the record of trial. That is the only action taken by them upon which inconsistency can be founded and I hope to show the fallacy of the hypothesis which assumes that a clemency document prepared after the trial proceedings have terminated reverts back and renders the sentence invalid.

After the trial had been completed, someone obviously wanted to call to the attention of the convening authority the form of clemency which the members thought might be appropriate. The recommendation did not suggest remotely that the court members believed the imposition of the punitive discharge was inappropriate. At best, it said they were of the opinion the convening or higher authority should give some consideration to remitting one ingredient of the sentence. Surely the members knew the sentence as assessed could be executed and that subsequent reviewers had discretion to reject their advice, for the wording used shows an intent to do no more than merely recommend.

I direct particular attention to the fact that the written recommendation is general and is silent as to any effective date of the remission. From that I infer the court intended to leave the details to the reviewing authorities. The court's paramount purpose was to suggest to others with power to act that all parts of the sentence should be executed except consideration should be given to not separating accused from the service by a bad-conduct discharge. He had expressed a desire to finish out his enlistment under certain conditions, and his previous record was such that it is reasonable to conclude the members of the court would expect him to show some evidence of his good faith before the remission became effective. He was sentenced to serve six months' confinement, to forfeit $65 per month for that period, and to be reduced to the grade of hospital recruit. It seems hardly likely that the members of the court would leave those provisions of the sentence untouched by any recommendation for clemency and yet expect the accused to

be retained in the service or to be given an honorable discharge if he failed properly and conscientiously to serve his time. In this connection it might be noted the Court's opinion recognizes the validity of a conditional remission and I suggest that the framer of the clemency recommendation can be charged with the responsibility of injecting the claimed inconsistency into this record.

In United States v Doherty, supra, as in this instance, the court unanimously recommended that the bad-conduct discharge be remitted. In that case the Chief Judge made the following statement, and I quote the entire paragraph:

"Unqualifiedly, I would not sanction any curtailment of the absolute freedom of a court to make recommendations for clemency. Moreover, when such a recommendation is made, it should not subject the court to the risk of having its sentence set aside. But, the inconsistency here between the court's action in imposing a bad-conduct discharge and its contemporaneous and unanimous recommendation for its complete remission is so striking and so unusual as to indicate that the court labored under a misapprehension of the full scope of its sentence power. *The basis for its misunderstanding appears in the Navy policy against retention of homosexuals.*" [Emphasis supplied.]

He there concluded that the court-martial misapprehended the full scope of its sentencing power because of a Navy policy against retention of homosexuals. Here, there is no policy that absentees be separated from the service by bad-conduct discharges, and there is no basis in reason or logic for holding that this court was influenced by any other service policy. Therefore, the net effect of the present holding is that the court members failed to fix an appropriate sentence with certainty merely because they sought to obtain for an accused some consideration which they could not give but which others who had been delegated the power could grant conditionally or unconditionally. It is an unusual concept indeed which charges the court with discrediting its own sentence when it follows a well-

known and legally-prescribed procedure and exhibits some sense of legal discrimination. There is a difference between the imposition of a sentence and the subsequent forgiveness of one of its ingredients. Moreover, the law differentiates between those in the military judicial system who can impose sentence and those who can forgive the penalties imposed. The court-martial appreciated the difference, but my associates seem unwilling to recognize that such could be the case.

I would affirm the decision of the board of review.