UNITED STATES, Appellee

v

RALPH R. PURGESS, Captain, U. S. Army, Appellant

13 USCMA 565, 33 CMR 97

No. 16,158

March 29, 1963

*Captain Gary G. Keltner* argued the cause for Appellant, Accused. With him on the brief were *Lieutenant Colonel Ralph Herrod, Captain Ronald L. Gainer,* and *Captain David M. Gill.*.

*Captain Peter J. McGinn* argued the cause for Appellee, United States. With him on the brief was *Lieutenant Colonel Francis M. Cooper.*

## Opinion of the Court

FERGUSON, Judge:

Captain Ralph R. Purgess was arraigned and tried before a general court-martial convened by the Commanding General, Southern Area Command, Munich, Germany, upon charges of dishonorable solicitation of an enlisted man to make a false official statement, receiving stolen goods, and false swearing, in violation, respectively, of Uniform Code of Military Justice, Articles 133 and 134, 10 USC §§ 933, 934. With certain exceptions not material here, the court-martial found the accused guilty and sentenced him to be dismissed from the service. The convening authority approved the sentence. An Army board of review affirmed, and we granted accused's petition for review, among other things, upon issues dealing with the sufficiency of the evidence to establish accused's guilt of false swearing. As all other questions involved are concerned with that offense, our disposition of the matter of sufficiency makes it unnecessary to reach them.

The specification before us alleges pertinently that Captain Purgess:

". . . did, at Augsburg, Germany, on or about 26 August 1960, in the course of an official investigation wrongfully and unlawfully make under lawful oath to an investigator a statement, in substance as follows: To the best of my knowledge the seat covers came from a German Concern,

**565**

or words to that effect, which statement he then knew to be false."

In an out-of-court hearing at the commencement of the trial, defense counsel moved to make the above specification "more specific" by averring the identity of the investigator to whom it was made and whether it was written or oral. Upon the representation of the trial counsel that only one statement was involved; that it was written; and that a copy would be attached to the record as an appellate exhibit, defense counsel professed satisfaction. The sworn statement so appended includes the sentence alleged in the count and was directed to one Henry E. Abrecht, a criminal investigator. It reads as follows:

"On or about January 1960 or thereabouts I contacted Sgt STEWART, Maintenance Sgt SACom Motor Pool, regarding seat covers for my car. He informed me that he could obtain them for me from a German source. Sometime in February or March he told me [he] had them and put them on my car with my aid. *To the best of my knowledge they came from a German concern.* R. R. P." [Emphasis supplied.]

From the foregoing, it will be seen the United States, in charging accused with false swearing, chose to rely on that portion of his statement which declared the seat covers in question came "from a German concern." Appellate defense counsel urge that the Government actually succeeded in proving this portion of Captain Purgess' statement to be true and, hence, the conviction cannot stand. We turn to the record to determine the soundness of this contention.

Accused, stationed at Munich, Germany, owned a 1951 Chevrolet sedan. The evidence reveals that he became dissatisfied with the condition of its interior and sought to remedy matters by obtaining seat covers. Initially, he used a leopard print cover. This also proved unsatisfactory, and he purchased a set of plaid seat covers from a mail order house in the United States.

Captain Purgess became equally upset over the fit and quality of the mail order covers. Aware of the fact that Army

sedans assigned to his organization used seat covers which would fit his car, he procured a set from Government stock through a Sergeant Stewart and a Specialist Santos. The former did maintenance work in the local motor pool and the latter was involved in vehicular supply activities. Stewart had repaired accused's car and helped install the earlier seat covers. On this occasion, he also assisted Purgess in placing the new covers on his sedan.

Several months later, an investigation ensued into alleged misappropriation of tires and seat covers in accused's organization. It was discovered that accused's automobile was equipped with covers which exactly matched those purchased and stocked by the Army. Moreover, these very covers were identified by the manufacturer, one Georg Kulzer, as having been made in Munich and sold by him only to the American forces. On August 26, 1960, accused, under oath, made the statement set out above to Mr. Abrecht, a criminal investigator.

From the foregoing, it will be seen that the evidence in fact establishes the seat covers were manufactured by a German concern for the United States Army and thus, in the words of accused's allegedly false statement, "came from a German concern," albeit by way of Government purchase, stocking, and theft therefrom. For this reason, we hold the evidence insufficient in law to establish accused's guilt of false swearing.

Generally speaking, the same rules which measure the sufficiency of proof in perjury cases apply in instances of false swearing. United States v Doctor, 7 USCMA 126, 21 CMR 252; United States v Gomes 3 USCMA 232, 11 CMR 232. The degree and character of proof required in such trials is different from the ordinary criminal prosecution. Cf. United States v Guerra, 13 USCMA 463, 32 CMR 463; United States v Magin, 280 F2d 74 (CA 7th Cir) (1960). The Federal courts have uniformly and properly required a high standard to be met in proving the falsity of an allegedly perjured statement, and it is on the basis of their

persuasive rationale that we today overturn accused's conviction.

Thus, in Galanos v United States, 49 F2d 898 (CA 6th Cir) (1931), the defendant was accused of committing perjury by testifying that he had not made arrangements for bonding one Gray. The Government established that defendant in fact joined in an agreement to indemnify a financially responsible person who, in turn, obtained the bond for Gray from a surety company. In reversing the judgment, the Circuit Court of Appeals declared, at page 899:

". . . Upon this state of facts, and particularly in view of the preceding effort in the cross-examination to have Galanos admit his acquaintance and dealing with the surety company agent, he was entitled to consider the question asked him as an inquiry whether he did not himself procure the surety company agent to give this bond; and his negative answer was literally true. *Clearly he cannot be convicted of perjury merely because his literally accurate answer might have been somewhat modified in effect if he had been asked to state all the circumstances. Perhaps, if he had been asked specifically, he would have answered truly.* The fact was that he did not 'make arrangements' *himself* for the making of a bond, but that Dukas made this arrangement." [Emphasis supplied in part.]

In United States v Slutzky, 79 F2d 504 (CA 3d Cir) (1935), defendant was alleged to have falsely denied having been convicted of a felony in New Jersey. The Government established that defendant in fact had been convicted of embezzlement and larceny in New Jersey. Under New Jersey law, however, these crimes were not known as felonies but as high misdemeanors. The conviction was reversed, the court stating, at page 505:

". . . Technically and actually his answer as to his conviction was responsive and correct. He had not been convicted of a felony. The government framed its questions badly, since there are no general classifications of crimes in New Jersey as felonies and misdemeanors. . . ."

*If the defendant's answers to questions were legally truthful, he cannot be held for perjury. The questions put to him must search for the truth, and he did tell the truth. Therefore he cannot be held to have been guilty of perjury as charged in the first count of the indictment below.*" [Emphasis supplied.]

And in Smith v United States, 169 F2d 118 (CA 6th Cir) (1948), the court said, at page 121:

"Appellant is right in his contention that *there can be no lawful conviction in a perjury case when an answer of the defendant, under oath, to a question propounded to him is 'literally accurate, technically responsive, or legally truthful.'* It is also true that, to sustain a conviction, it must be shown by clear, convincing and direct evidence to a moral certainty and beyond a reasonable doubt that the defendant committed wilful and corrupt perjury." [Emphasis supplied.]

To the same effect, see Hart v United States, 131 F2d 59 (CA 9th Cir) (1942).

Our attention has not been directed to a single authority impugning the validity of the foregoing concept. On the contrary, the Government contents itself with the position that, in context, accused's statement must be taken to mean that he thought the seat covers had been purchased on his behalf by Sergeant Stewart from a German concern and that the interrogatories posed by Investigator Abrecht indicate such to have been the understanding of the parties. We have set out the entire statement above. There is no indication in its context that the allegedly false averment was intended to mean that the seat covers were purchased by Stewart from a German supplier. Moreover, the record is devoid of any evidence concerning the questions put to Captain Purgess by Abrecht. Rather, the Government was satisfied at the trial to establish only that Abrecht interviewed accused, who first gave him an oral statement and afterwards personally reduced it to writing. Cf. United States v Guerra, supra. Under these circum-

stances, it is difficult to perceive how it may be concluded that the meaning attributed by the Government to accused's statement is established "by clear, convincing and direct evidence to a moral certainty and beyond a reasonable doubt." Smith v United States, supra, at page 121. At best, the Government's contention amounts to a claim that an admitted ambiguity should be construed in its favor. We decline to do so, believing the correct position to be that doubts as to the meaning of allegedly false testimony should be resolved in favor of truthfulness.

We hold, therefore, that statements under oath which are literally, technically, or legally true cannot █ serve as a basis for a conviction of false swearing. Here, the accused's statement was literally true insofar as it went, for the seat covers did in fact come "from a German concern." United States v Slutzky, supra; Galanos v United States, supra. Accordingly, his conviction of false swearing must be set aside.

The findings of guilty of the Additional Charge and its specification are set aside and ordered dismissed. The sentence is set aside, and the record of trial is returned to The Judge Advocate General of the Army for further reference to a board of review. The board may reassess the sentence in light of the remaining findings of guilty.

Judge KILDAY concurs.

QUINN, Chief Judge (dissenting):

The statement in issue was made in August 1960. The principal opinion concludes it is ambiguous, and the ambiguity should be resolved in favor of the accused. If that were the actual situation, I would readily agree. See my dissent in United States v Doctor, 7 USCMA 126, 21 CMR 252.

The underscoring in the principal opinion of part of the accused's statement should include the fact that the accused spoke to Sergeant Stewart about seat covers in January 1960, and that he was informed Stewart could obtain them from a "German source." This part of the statement makes crystal clear that the "German concern" the accused was talking about was the "German source" purportedly mentioned by Stewart. It is equally clear the statement says the covers were obtained from a German concern in February or March 1960, and it does not refer to a four-year-old transaction under which a German firm made the covers for the Army, an event which antedated by about two years the accused's arrival in Germany. I would affirm the findings of guilty.